OPINION OF THE COURT
Joan S. Kohout, J.
On November 28, 1995 a proposed adjusted order of support was filed with the Monroe County Family Court by the Monroe County Child Support Enforcement Unit (CSEU) pursuant to the "adjustment of child support orders” provisions of section 413 (3) of the Family Court Act. The proposed order would have increased Mr. H.’s child support obligation from $45 per week to $106 per week. Mr. H. objected to the entry of the proposed order and the matter was referred to a Hearing Examiner of this court. (Family Ct Act § 413 [3] [c].)
After hearing testimony from both parties and a representative of the CSEU, the Hearing Examiner issued findings of fact and an order in which she sustained Mr. H.’s objections and refused to sign the proposed order. Objections to the decision of the Hearing Examiner have now been filed by CSEU, asserting that the Hearing Examiner erred in refusing to sign the adjusted child support order. No objections were filed by the petitioner.
The court has reviewed the court file, the exhibits and listened to the tape recorded transcript of the hearing held on Mr. H.’s objection. For the reasons set forth in this decision, the Support Unit’s objections are denied.
FINDINGS OF FACT
On March 10, 1983 an order was entered in Monroe County Family Court which approved the agreement between the Monroe County Department of Social Services and the respondent, in which Mr. H. agreed to pay $25 per week for support of the unborn child of the parties. Mr. H. also agreed to provide *728 health, medical and dental insurance through his employer and make all child support payments to the Monroe County Child Support Enforcement Unit.
On March 14, 1989 as the result of a modification proceeding brought by Ms. K. in Monroe County Family Court, Mr. H.’s child support obligation was increased to $45 per week. At the time of the hearing, Mr. H.’s income was determined to be $31,608 per year. His obligation to provide insurance for the child was continued. Child support payments continued to be made through the Support Unit.
In April 1991 a second petition was filed by Ms. K., seeking an increase in child support, this time in Steuben County. Ms. K.’s petition was dismissed with prejudice resulting in an order dated April 24, 1991.
In August 1995 Monroe County CSEU received a handwritten request from Ms. K. for a review of her child support order. Although Ms. K. has for some time been a resident of Hornell in Steuben County, the case has continued to be serviced through Monroe County CSEU.
CSEU began its review on September 11, 1995 at which time Mr. H. and Ms. K. were mailed a notice of intent to review and an affidavit of net worth form. According to Support Unit Supervisor Andrew Kaiser, the Support Unit received a completed net worth statement from Ms. K., but not from Mr. H. He stated that he considered her income as zero since she stated that she was unemployed.
The Support Unit then contacted the New York State Department of Taxation and Finance and received an "adjusted gross income” figure of $32,167 for Mr. H. for 1994.
The Support Unit figured Mr. H.’s basic child support obligation on the figure supplied by New York State, without doing any additional investigation or making any deductions or variations. His child support was calculated as 17% of $32,167 or $106 per week.
The Support Unit filed the proposed adjusted order with the Family Court on November 29, 1995. With the proposed order was an affidavit with findings in support of the child support order, a letter to Mr. H. dated November 28, 1995 and an undated "Notice of Adjustment of Child Support Order and Rights of the Parties.”
A hearing was held before the Hearing Examiner at’which time Monroe County CSEU and Mr. H. appeared by counsel and Ms. K. appeared pro se. At the hearing CSEU and the par *729 ties presented, proof, including testimony from both Ms. K. and Mr. H. and from a CSEU supervisor, Andrew Kaiser. A review of Ms. K.’s W-2 Forms showed that she earned $14,619.94 in 1994 and $9,398.81 in 1995. Mr. H.’s W-2 Forms showed $32,167 for 1994 and $30,089.77 for 1995.
CSEU argued that the proposed order for $106 per week was correct[1] and should be signed. Respondent argued that CSEU failed to follow statutory procedures and their own regulations by neglecting to consider the existence of variance factors in the prior order and failing to consider that a subsequent request for increase had been denied with prejudice. He further argued that he was entitled to a variance from the Child Support Standards Act (CSSA) for many reasons and that regulations prohibited the proposed order from requiring that he pay 100% of uninsured medical expenses.
In its objection CSEU argues for the first time[2] that the Hearing Examiner should have modified the proposed order to include the "correct” presumptive amount of $97, which it claimed is the CSSA amount based on Mr. H.’s 1994 adjusted gross income minus Social Security and Medicare taxes.
CONCLUSIONS OF LAW
In 1993 the New York Legislature created a procedure codified in Family Court Act § 413 (3) for the periodic review and adjustment of child support orders for children receiving public assistance or child support services through a support collection unit. Family Court Act § 413 (3) (a) permits the CSEU to submit a proposed order including an increased support amount in cases where there is a 10% or more deviation from the last permanent support order or where the last order fails to provide for a child’s health care or insurance needs.
The CSEU is required to review prior orders issued after the Child Support Standards Act was in effect (Sept. 15, 1989) where the formula amount was not directed, but a variance was granted. (Family Ct Act § 413 [3] [a]; see also, 18 NYCRR 347.26 [e] [5] [iii].)
*730 The New York State Department of Social Services has promulgated detailed regulations outlining mandatory procedures for the review of support orders for possible adjustment. (18 NYCRR 347.26 [e].) In this case the Monroe County CSEU failed to follow these regulations in at least two respects: (1) it allocated more than 75% of uninsured medical expenses to the respondent (18 NYCRR 347.26 [e] [4] [iii] [c]); (2) it failed to recalculate the child support obligation in accord with the CSSA, as incorporated into section 347.10 (a)[3] by failing to deduct FICA, and in failing to include Ms. K.’s income as reported by her. (See, 18 NYCRR 347.26 [e] [4] [i], which requires calculation of basic child support obligation in accordance with section 347.10 [a] of the regulations.)
As a result of the errors in procedure and inaccurate wage information CSEU’s proposed adjusted order was erroneous. As the Hearing Examiner correctly found, Mr. H.’s reported most recent yearly gross income on his W-2 Forms was $30,089.70, not $32,167, the amount used by CSEU. When Mr. H.’s 1995 W-2 income of $30,089.77 is reduced by Social Security and Medicare tax actually paid of $1,260.85 his CSSA income is $27,828.92 for a weekly presumptive amount of $90.98.
The Family Court Act provides little guidance as to the nature of the hearing to be held upon an objection from a proposed adjusted order, or the extent of the court’s authority regarding the order. The court is directed to schedule a hearing "on notice to the parties and the support collection unit, who shall have the right to be heard by the court and to offer evidence in support of or in opposition to adjustment of the support order. ” (Family Ct Act § 413 [3] [c] [emphasis added].)
Since proof may be presented only in support of or in opposition to the order, it is reasonable to assume that the court can only affirm the order if it is appropriate, or deny it if it is not. There is no authority in the statute to modify the order in any respect as suggested by CSEU in its objections. In this regard, this court disagrees with the decision by my colleague in Matter of Yuschuk v Eichas (168 Misc 2d 775).
Family Court is a court of limited jurisdiction and is only empowered as specifically authorized by statute. (Borkowski v Borkowski, 38 AD2d 752 [1972].) Family Court Act § 413 (3) (c) establishes an administrative review by CSEU with a very *731 limited role for the Family Court. The Legislature appears to have deliberately circumscribed the court’s power in these cases, perhaps as a step toward taking child support out of the court system altogether.
There is no indication in the statute that the Legislature intended the Family Court to modify, correct or in anyway change the adjusted orders produced by administrative periodic reviews and adjustment. It is far more likely that erroneous orders were intended for re-review by the agency[4] in cases where the proposed order was denied, or alternatively, the parties were expected to file their own petitions to modify, if the facts justified such account. Indeed, Family Court Act § 413 (3) (a) states: "Nothing herein shall be deemed in any way to limit, restrict, expand or impair the rights of any party to file for a modification of a child support order as is otherwise provided by law.”
Based upon the record presented here, the Hearing Examiner’s determination is affirmed and the objections of CSEU are denied since the proposed order was erroneous as to the amount of child support directed and the percentage of uninsured medical expenses.

. Although CSEU argued that the Hearing Examiner should sign the order directing support in the amount of $106 per week, Ms. Owlett, representing CSEU, at the request of the Hearing Examiner did her own calculation and acknowledged that the correct CSSA amount was $97.

. Although this issue was not raised before the Hearing Examiner, respondent has not objected to the court considering whether the Hearing Examiner had the authority to modify or "correct” the proposed order. Therefore, the court has addressed that question here.

. 18 NYCRR 347.10 (a) incorporates the CSSA standards contained in Family Court Act § 413.

. Neither the Family Court Act nor the regulations state what action CSEU may take after a proposed adjusted order is denied. The court, however, can find no basis for concluding that it may not continue the review process and submit a corrected proposed order based upon information offered at the court hearing.