[— NYS2d —]

In the Matter of COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, on Behalf of ELEANOR C., Appellant, v DARYL S., Respondent.

In the Matter of COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, on Behalf OF DORIS G., Appellant, v NARCISCO G., Respondent.

First Department, November 18, 1997

**APPEARANCES OF COUNSEL**

*Alan Beckoff* of counsel (*Stephen J. McGrath* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for Eleanor C. and another, appellants.

No appearance for respondents.

## OPINION OF THE COURT

RUBIN, J.

In these cases, the Department of Social Services (DSS), as assignee of the child support rights of a public assistance recipient, obtained orders of support directing the respective respondents to pay child support to DSS through the Support Collection Unit. At issue in both appeals is the authority of Family Court to impose a schedule for respondents' payment of child support arrears. Also at issue in the case of respondent Daryl S. is the authority of a Hearing Examiner to make an order for the purpose of assisting respondent in avoiding the suspension of his driving privileges.

### FACTS:

### Daryl S., Respondent

DSS, as assignee of the child support rights of Eleanor C., a public assistance recipient, filed a paternity and support peti-

tion in New York County Family Court, obtaining an order of filiation and final order of support on June 14, 1989. Respondent was directed to pay child support to DSS through the Support Collection Unit (SCU) in the amount of $44 biweekly, commencing June 23, 1989, together with payments in the amount of $4 biweekly towards arrears in retroactive support of $132.

On February 13, 1996, respondent Daryl S. filed a petition in Family Court seeking a downward modification in the amount of child support payable under the order, an adjustment in the amount of the arrears and the refund of an alleged overpayment. At a hearing conducted on March 13, 1996, DSS established that the child was still on public assistance and that arrears, as calculated by the SCU, totaled $2,600. Following an adjournment to allow respondent the opportunity to make inquiry into the amount of the arrears, the Hearing Examiner issued the subject payment order which, as reflected by the order of Family Court appealed from, reduced the amount payable for support from $44 to $25 for the two-month period commencing May 13, 1996, after which it reverted to the original rate of $44 a month. In addition, the Hearing Examiner set the amount payable on arrears at $6 biweekly. As stated in petitioner's brief, the Hearing Examiner indicated that the court-ordered payment schedule was intended "to enable respondent to show SCU a court-ordered payment schedule so that it would not block respondent from getting a driver's license" (Vehicle and Traffic Law § 510 [4-e] [3]; Social Services Law § 111-b [12]).

DSS filed an objection, to which respondent Daryl S. filed no rebuttal, arguing that the Hearing Examiner was without authority to schedule payment of the arrears. The agency further contended that respondent's remedy was to seek administrative relief before the SCU and to commence a proceeding pursuant to CPLR article 78 if dissatisfied with the result. Family Court denied the objection, stating that the Hearing Examiner's imposition of a payment schedule did not prejudice the agency's right to collect the arrears.

Narcisco G., Respondent

DSS, as assignee of the child support rights of Doris G., a public assistance recipient, filed a support petition in Bronx County Family Court, obtaining an order of filiation and final order of support on January 24, 1986. Respondent was directed to pay child support to DSS through the SCU in the amount of $25 weekly, commencing January 31, 1986, together with pay-

ments in the amount of $5 weekly towards retroactive support arrears of $425. The child's public assistance case was closed on December 27, 1990 and a final check was issued by DSS for the period ending January 11, 1991.

On March 11, 1996, respondent Narcisco G. filed a petition in Bronx Family Court seeking an order canceling child support arrears, vacating an income execution order against him and terminating the support order. On March 19, 1996, a Hearing Examiner entered an order terminating support effective January 11, 1991 and transferred the case to the Central Support Enforcement Term in New York County Family Court to fix the amount of arrears. At a hearing held on April 30, 1996, DSS submitted a statement from the SCU showing that respondent had paid a grand total of $207.09 to the SCU, having accumulated $6,669.91 in combined retroactive and current arrears, of which $425 is denominated retroactive arrears.

In findings of fact dated May 17, 1996, the Hearing Examiner applied a six-year Statute of Limitations, calculated from the date of respondent's petition, limiting total arrears to $1,100 (from March 11, 1990 to January 11, 1991, the effective closing date of the public assistance case). The Hearing Examiner likewise entered an order dated May 17, 1996 terminating the order of support effective January 11, 1991 and ordered respondent to "pay or cause * * * to be paid" the amount of the arrears to the SCU.

DSS filed an objection, arguing that it was error for the Hearing Examiner to apply the Statute of Limitations. Respondent Narcisco G. did not file a rebuttal. Family Court granted petitioner's objection, holding that the Statute of Limitations is inapplicable to child support arrears. However, the court went on to state that the "arrears due to DSS are set at $6,800, payable at $50.00 monthly."

Payment Schedule

On appeal from these orders, petitioner objects to the court's imposition of a schedule for the payment of arrears with respect to both retroactive and prospective child support. Relying on *Matter of Commissioner of Social Servs. (Sealy) v Sealy* (139 Misc 2d 563 [Fam Ct, NY County 1987]) and *Matter of Monroe County Dept. of Social Servs. (Connor) v Walker* (178 AD2d 1012 [4th Dept 1991]), petitioner suggests that "Family Court lacks subject matter jurisdiction over questions involving SCU's operations, which should be handled administratively and then through Article 78 review". Therefore, a judgment debtor or obligor who "seeks to challenge an SCU income exe-

cution order must do so administratively, pursuant to the procedures outlined in Family Court Act § 440 (1) (b) (1) and CPLR § 5241 (e). Relief from SCU's determination is by an Article 78 proceeding in Supreme Court."

Petitioner bases his argument on the distinction between "retroactive child support" and "current arrears". Petitioner defines "retroactive child support" as "the amount of support for the period commencing from the date of the filing of the petition and continuing until the date of the final support order" (citing Family Ct Act § 440 [1] [a]; § 449 [2]; § 545 [1]). By contrast, "Current arrears are the unpaid installments of prospective child support, or the current obligation. They accrue during the time period beginning with the entry of the first final prospective child support order * * * and continue until emancipation of the child or termination of the order" (citing Family Ct Act § 413 [1] [a], [b ] [2]; § 451; Social Services Law § 111-b [12] [b] [1]). Unfortunately, this distinction is not particularly helpful to an assessment of the limits placed upon Family Court's continuing jurisdiction to supervise an order of support.

The significance of the "retroactive amount of support due" arises in connection with the scope of a support order issued "on behalf of persons in receipt of services pursuant to section one hundred eleven-g of the social services law, or on behalf of persons in receipt of public assistance" (Family Ct Act § 440 [1] [a] [i]). The effective date of an order directing the payment of child support is prescribed to be the earlier of (1) the date of filing of the petition or (2) the date on which eligibility of the children for public assistance became effective (Family Ct Act § 440 [1] [a] [iii]). The requirement to make the support order retroactive is also set forth in Family Court Act § 449 (2). While not expressly defined, it is reasonably clear that the "retroactive amount of support due", also denominated "support arrears/past-due support" in that section, is the amount that accrues from the date of eligibility for public assistance—or, if earlier, the date of filing of the petition—to the date the order of support is entered (*Matter of Commissioner of Social Servs. [Rodriguez] v Benson*, 216 AD2d 294; *see also*, Besharov, 1993 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 439, 1997 Pocket Part, at 88).

Family Court Act § 440 (1) (a) was amended in 1993 to be quite specific that, where children are in receipt of public assistance, payment of "the amount of retroactive child support" is to be enforced by the Support Collection Unit, and among the

enforcement devices available is the income execution order pursuant to CPLR 5242 (c) (L 1993, ch 354, § 3): "In such case, the court shall not direct the schedule of repayment of retroactive support" (*ibid.*). Therefore, at least with respect to arrears in retroactive support due at the time the initial order of support is entered, it is clear that Family Court is without authority to impose a payment schedule. The amount involved, however, is often relatively minor, as in the case of respondent Narcisco G., where it amounts to some $425 out of $6,800 in outstanding arrears.

Family Court retains continuing jurisdiction over support proceedings, including the power to "increase support payments nunc pro tunc as of the date of the initial application for support based on newly discovered evidence" (Family Ct Act § 451). The "retroactive amount of support due" is the increase in the amount of support for the retrospective period (*ibid.*; *Matter of Department of Social Servs. [Angela C. M.] v Douglas D.*, 226 AD2d 633, 634). Family Court Act § 451 provides that this amount "shall be paid in one lump sum or periodic sums, as the court directs, taking into account any amount of support which has been paid" (*see, Matter of Richardson [Kimberly S.] v Scott M. C.*, 157 Misc 2d 615, 616). Therefore, in this instance, the court is expressly authorized to impose a payment schedule with respect to the amount of retroactive support arrears.

Because the definition and treatment vary with the context, the distinction between arrears in retroactive support and current support provides little guidance in determining the respective powers allocated to Family Court and the SCU. Family Court Act § 451 does, however, impose significant limits on the power to "modify, set aside or vacate any order issued in the course of the proceeding", providing that the court "shall not reduce or annul child support arrears accrued prior to the making of an application *pursuant to this section*" (Family Ct Act § 451 [emphasis supplied]). As this Court noted in *Matter of Commissioner of Social Servs. of City of N. Y. (Gomez) v Gomez* (221 AD2d 39, 42 [Kupferman, J.]), New York State's participation in the Aid to Families with Dependent Children program requires that it "have in effect laws requiring the use of procedures which require that any payment or installment of support under any child support order is 'not subject to retroactive modification by such State or by any other State' (42 USC § 666 [a] [9] [C]). To that end, the 1986 amendment to section 451 'precludes "forgiveness" of child support arrears to

ensure that respondents are not financially rewarded for failing either to pay the order or to seek its modification.' (Governor's Approval Mem for L 1986, ch 892, 1986 McKinney's Session Laws of NY, at 3213.)"

The limits imposed upon the power of Family Court do not entirely preclude the judgment debtor or obligor from seeking review of a support order. Also in 1993, legislation was enacted that "authorizes local support collection units to enforce child support orders" and "establishes a procedure for support collection units to review all support orders payable through them that are three years old or older" (Governor's Approval Mem for L 1993, ch 59, 1993 McKinney's Session Laws of NY, at 2882). The enactment mandates periodic review where, as in the matters on appeal, "there is an assignment of support rights or in which a request for an adjustment review is made" (L 1993, ch 59, § 20, adding Social Services Law § 111-h [12]-[17]; *Matter of Commissioner of Social Servs. [Lisa C.] v Mark C.*, 169 Misc 2d 205, 206; *Matter of Department of Social Servs. [Webb] v Clarke*, 167 Misc 2d 836, 837 [1996]).

Any party to an order of support issued on behalf of a child who is in receipt of either public assistance or of support services pursuant to Social Services Law § 111-g may obtain review of the order by submitting a request to the SCU (Family Ct Act § 413 [3] [a]). Within 30 days of receipt of adjustment findings, a party may "submit to the court identified thereon written objections to such finding and proposed order" (Family Ct Act § 413 [3] [c]; *Matter of Department of Social Servs. [Webb] v Clarke, supra*, at 838). The court is required to schedule a hearing "on notice to the parties and the support collection unit" (Family Ct Act § 413 [3] [c]). Absent an objection, the clerk of the court is directed to "immediately issue the order without any further review, modification, or other prior action by the court or any judge or hearing examiner thereof" (*ibid.*). By implication, Family Court is empowered to modify the findings or proposed order of the SCU upon sustaining an objection (*Matter of Commissioner of Social Servs. [Lisa C.] v Mark C., supra*, at 207-208).

The new provision for review of a child support order is distinct from the procedure provided in CPLR 5241 (e), urged by petitioner to be the exclusive basis for relief. Where review is sought due to an asserted "mistake of fact" (CPLR 5241 [a] [8]) in connection with the issuance of an income execution order by the SCU, objection must be made to the agency within 15 days after service of a copy of the execution, and "the agency

shall determine the merits of the objection * * * within forty-five days" after service of the notice of execution (CPLR 5241 [e]). *Matter of Commissioner of Social Servs. [Sealy] v Sealy* (139 Misc 2d 563, 567-568, *supra* [1987]), cited by petitioner, predates enactment of the administrative review procedure by six years. Nevertheless, it strongly suggests that "mistake of fact" review pursuant to CPLR 5241 (e) is inapposite where, as here, an application for review is submitted long after the effective date of the income execution order and where modification is sought due to changed circumstances. In any event, the procedure for court review of a finding or proposed order of the SCU became effective July 1, 1993 (L 1993, ch 59, § 78) and supersedes the case law relied upon by petitioner.

The 1993 legislation makes it clear that initial review of a child support order is the prerogative of the SCU. In the matters on appeal, application for relief from the order of support was made directly to Family Court in contravention of the requirement to seek relief before the administrative agency in the first instance. The 1993 legislation "clearly defines the roles of family court and the Support Collection Unit (SCU) in the establishment and collection of arrears for child support" (Mem of Legislative Representative of City of NY in Support of L 1993, ch 354, 1993 McKinney's Session Laws of NY, at 2595). To permit direct application to Family Court for relief from an order of support would undermine the Legislature's allocation of "the authority of the court in determining the amount and the SCU in performing the collection" of child support arrears (*ibid.*).

Suspension of Driver's License

The failure to exhaust administrative remedies before seeking judicial intervention is dispositive of the Hearing Examiner's modification of the payment schedule of respondent Daryl S. Hearing Examiners are, *inter alia,* "empowered to hear, determine and grant any relief within the powers of the court in any proceeding under [article 4]" (Family Ct Act § 439 [a]). Therefore, for purposes of an application directed to the continuing jurisdiction of Family Court (Family Ct Act § 451), the Hearing Examiner's power is coextensive with that of the court. However, for the purpose of granting any relief in connection with the suspension of driving privileges, the Hearing Examiner is forbidden "to hear, determine and grant any relief with respect to issues specified in subdivision five of section four hundred fifty-four" of the Family Court Act (Family Ct Act § 439 [a]). That section, which has its parallel in Social Ser-

vices Law § 111-b (12) (d) (2), provides for review by the court following the SCU's denial of a challenge made by the support obligor to the suspension of driving privileges. Therefore, to the extent that respondent Daryl S. has a basis for seeking such relief, independent of his request for modification of the support order, he is likewise required to exhaust his administrative remedies prior to seeking review by the court.

Accordingly, the order of the Family Court, New York County (Gloria Sosa-Lintner, J.), entered on or about August 19, 1996, which directed respondent Daryl S. to pay retroactive and current child support arrears in the amount of $2,600 in accordance with a payment schedule, should be reversed, on the law, without costs, and the order vacated. The order of the Family Court, New York County (Gloria Sosa-Lintner, J.), entered on or about August 23, 1996, which directed respondent Narcisco G. to pay outstanding child support arrears in the amount of $6,800 in accordance with a payment schedule, should be reversed, on the law, without costs, and the order vacated.

SULLIVAN, J. P., ROSENBERGER and ANDRIAS, JJ., concur.

Order, Family Court, New York County, entered on or about August 19, 1996, which directed respondent to pay retroactive and current child support arrears, reversed, on the law, without costs, and the order vacated; order, same court and Judge, entered on or about August 23, 1996, which directed respondent to pay outstanding child support arrears, reversed, on the law, without costs, and the order vacated.